SNELL SASH AND DOOR COMPANY v. CHARLES S. FLORSHEIM AND OTHERS. ·
PRUDENTIAL INSURANCE COMPANY OF AMERICA, APPELLANT.[1]

March 17, 1944.

No. 33,659.

O. O. *Myhre* and *Christensen & Ronken,* for appellant.

*Stephen Schmitt,* for plaintiff-respondent. ·

*James T. Spillane,* for respondents J. A. Peterson, *d. b. a.* Peterson Electric Company, and Paul H. Dallman, *d. b. a.* Dallman Sheet Metal Shop.

[1]Reported in 13 N. W. (2d) 776.

*Schacht & Schacht,* for respondents Bert Leitzen, *d. b. a.* Leitzen Concrete Products, and Ole Dison, *d. b. a.* Ole's Linoleum & Drapery Shop.

*Irving L. Eckholdt,* for respondent J. A. Daly, *d. b. a.* Rochester Plumbing and Heating Company.

MAGNEY, JUSTICE.

On June 16, 1941, under an executory contract for sale, defendant Charles S. Florsheim purchased from appellant, the Prudential Insurance Company of America, an improved farm in Olmsted county. He took possession immediately. The house on the farm was in bad repair. In the latter part of August or the early part of September 1941, Florsheim commenced making improvements, which progressed continually until completion. He remodeled the dwelling, built a smaller house back of it, and made changes in the barn. The work was substantially completed in December 1941. Florsheim then moved in.

Plaintiff furnished millwork for these improvements. The first delivery was on November 3 and the last on December 12, 1941. Florsheim failed to pay, and plaintiff filed a lien on the premises. Other materialmen, who are respondents here, were also compelled to file liens in order to protect themselves. In an action to foreclose these liens, the court made findings favorable to the lienholders and ordered a sale of the 40 acres on which the improvements were made to satisfy the liens. The Prudential company appeals from the order of the trial court denying its motion in the alternative for amended findings or a new trial.

■ Minn. St. 1941, § 514.06 (Mason St. 1927, § 8495), which is involved in this action, reads:

"* * * When improvements are made by one person upon the land of another, all persons interested therein otherwise than as bona fide prior encumbrancers or lienors shall be deemed to have authorized such improvements, in so far as to subject their interests to liens therefor. Any person who has not authorized the same may protect his interest from such liens by serving upon the persons

doing work or otherwise contributing to such improvement *within five days after knowledge thereof,* written notice that the improvement is not being made at his instance, or by posting like notice, and keeping the same posted, in a conspicuous place on the premises." (Italics supplied.)

It is admitted that no notice of nonassent was posted and that no written notice under the statute was served upon respondent lienholders, except upon J. A. Daly, doing business as Rochester Plumbing and Heating Company, which notice was served after the work was completed.

Appellant claims that it had no knowledge that the improvements were being made until they were completed, and that therefore it could not be required to serve or post notices of nonassent. The question here is whether appellant had notice of the improvements during the progress thereof and failed to protect its rights by compliance with the provision of the statute requiring the fee owner to give notice that the improvements are not being made at his instance.

N. H. Peterson was appellant's property inspector in the district covering these premises, working out of the branch office in Minneapolis. Fred Persons was its farm property manager, and his headquarters were also in the Minneapolis branch office. Mr. Cooper was the manager of the entire branch "in both loans and property, city and farms." Peterson was on the property often during the time the work was going on. He was first there in the latter part of August or the early part of September, when the work started. He saw the men working. Persons testified that Peterson informed him in August 1941 that "they were starting or going to start." Persons was asked: "Now, as a matter of fact, you were aware, were you not, during the fall of 1941 that these improvements were taking place?" and he answered: "Only by hearsay, yes." Persons also stated that Florsheim was in the Minneapolis office in October and told him (Persons) that he was remodeling the house.

"Q. So at that time you were fully aware of the fact that the improvements were taking place?

"A. I was aware of the fact—he told me he was doing that, yes."

In December, while the work was still going on, Persons and Peterson went out to the farm together. While there, they discussed the improvements. Persons was asked:

"Q. Prior to the time that you went there in December you were aware of the fact that materials were being furnished by certain material firms?

"A. I had been told so, yes.

"Q. You had no reason to believe otherwise, did you?

"A. No, I didn't have no reason to."

In August 1941, Peterson reported to Persons that the Rundell Lumber Company was figuring on furnishing material. So a non-assent notice was sent to that company. It stated in part:

"* * * the said vendor does not consent thereto so as to subject its interest and title to the lien of any mechanics' lien for such labor and material; provided, however, that this notice is not intended to prejudice your rights to a lien upon the interests of said vendee."

Persons was asked:

"Q. And the intent and purpose of that exhibit was to protect the Prudential as against liens?

"A. That is right.

"Q. And you were aware at that time, were you not, that this improvement was being undertaken?

"A. Being contemplated, yes."

A similar notice had previously been served on the Underwood Lumber Company. It is apparent that appellant was not so much concerned about the improvements being made as to protect its interests against liens. Mr. O. O. Myhre, its branch counsel, who prepared the notices, testified that they did not want to antagonize Mr. Florsheim more than they had to, that "if he was able to go ahead

and pay for this stuff that we weren't going to block him absolutely."

In the latter part of July 1941, Florsheim had a conference with Cooper and Myhre in the Minneapolis office. Florsheim told about his contemplated improvements, and Cooper told him he must not go ahead.

Neither Peterson nor Cooper was called as a witness by appellant.

In its answer, appellant pleads that on several occasions it specifically instructed Florsheim to refrain from further improving the premises or altering structures thereon unless labor and material should be paid as contracted for. This is clearly an admission that it had knowledge that improvements were being made.

From the testimony and this admission it is evident that appellant had knowledge, not only that improvements were contemplated, but that they were actually being made. In the language of the statute, it had "knowledge thereof." No notice of nonassent was posted or served in compliance with the statute.

In Berglund & Peterson v. Abram, 148 Minn. 412, 416, 182 N. W. 624, 625, this court stated:

"* * * To remove grounds for controversy and to make the protection intended more certain and effective, the statute imposes on every person, having an interest in the property and who knows that improvements are being made thereon which he has not authorized, the duty to warn the laborers and materialmen concerned that the improvements are not being made at his instance, and provides that if he fails to give such warning he 'shall be deemed to have authorized such improvements' to the extent of subjecting his interest to a lien therefor."

And in Bruer Lbr. Co. v. Kenyon, 166 Minn. 357, 359, 208 N. W. 10, 11, this court said:

"This statute has been construed and applied frequently, and its meaning and effect are well settled. It makes the interest of the owner subject to liens for improvements made upon his land, unless he gives the required notice within five days after learning that the improvement is being made."

Thus the vendor here is precluded by a statutory provision from showing any reason it may have had for not serving or posting the statutory notices. The statute has no exceptions.

■ The finding of the trial court that appellant had knowledge of the improvements for which liens are claimed and that it failed to give notice that they were not made at its instance is fully supported by the evidence.

■ Appellant contends the court erred in not permitting it to cross-examine Florsheim as an adverse party under the statute. There was no issue between them to be tried, and nothing that he could have testified to that would have had any bearing on the rights of the lienholders. Any admission by Florsheim could not have bound them. The court disposed of this matter by saying: "I think I will receive the evidence, and they can offer it for such relevancy as it may have." Appellant's counsel then proceeded with the examination.

Order affirmed.